PHARR *et al. v.* NASHVILLE, C. & ST. L. RY.

(*Nashville,* December Term, 1947.)

Opinion filed February 28, 1948.

FRANK G. CLEMENT and LEON JOUROLMON, JR., both of Nashville, for plaintiff in error R. R. & Public Utilities Commission.

DUDLEY PORTER, SR., of Paris, for plaintiffs in error Clinton A. Mathews *et al.*

WILLIAM H. SWIGGART, EDWIN F. HUNT, DAVID M. KEEBLE and WALKER & HOOKER, all of Nashville and JAMES W. VAN DYKE, of Paris, for defendant in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The sole question for our determination on this appeal involves the authority of the Railroad & Public Utilities Commission of the State to order the abandonment by the Nashville, Chattanooga & St. Louis Railway of a

"team track" in the City of Paris, Tennessee, and requiring it to be located elsewhere.

The Commission claims to have exercised its authority by virtue of Code, Secs. 5449 and 5450 and Chapter 130 of the Public Acts of 1939. We will refer to the parties, Railroad & Public Utilities Commission as the "Commission," and Nashville, Chattanooga & St. Louis Railway as the "Railway" Company.

The Railway Company, in denying the authority of the Commission to make such an order, insists that Chapter 130 of the Acts of 1939 is unconstitutional; but if held to be constitutional it confers no authority to justify the action of the Commission.

The circumstances giving rise to the present controversy can be briefly stated. In 1942 the Railway built what is called the "Dunlap Team Track," which is a spur track, in the suburbs of Paris and in close proximity to a residential section. It is called a "team track" to designate it as a convenient track for the loading and unloading from and to wagons and other vehicles without having to drive to the terminals of the company.

Complaint was formally made before the Commission by three citizens of Paris that this "team track" was a nuisance by reason of loud noises emanating from it; that it was detrimental to the public health in that there were no toilet facilities for employees, and was also a hazard to the traveling public. There was a formal hearing by the Commission upon the complaint, the Railway appearing by counsel and making denial of each and every charge. It interposed the further defense that the Commission was without any legal authority to order the removal of its said "team track" to some other place. Following the entry of the order of removal complained of the Railway filed its petition for *certiorari* in the Third

Circuit Court of Davidson County seeking a review of the action of the Commission and praying that the order be set aside and for nothing held.

There was a hearing on the petition and answer of the Commission, the three citizens of Paris, and the record as certified, also on a stipulation of facts. The trial judge sustained the petition and entered a judgment voiding the order of the Commission. The Commission, and the citizens who made the original complaint, have appealed and assigned errors which raise the questions stated in the outset of this opinion.

The Act of the Legislature here assailed as invalid is an amendment to Code, Secs. 5449, 5450. Contention is made that the Act is in violation of Article 2, Section 17 of the Constitution of Tennessee, "in that the contents of said Act were not adequately described in the caption thereof." The appellants contend that the trial judge was in error in sustaining the Railway in this regard. The caption of the amendatory Act is as follows: "An Act to amend the Code of Tennessee, Section 5449 and Section 5450."

The body of the Act provides:

" '5449. However, none of the provisions of this statute following and none of the powers conferred upon the Commission shall apply to any railroad, whether operated by an incorporated company or individual, which is operated in this State and which is regulated and governed by the provisions of Section 5380-5447, except it is specifically provided that the Railroad and Public Utilities Commission shall have the power and authority to inspect the conditions existing on trains or along the rights-of-way, yards and terminals of all commercial railroads, interurban railroads and street railroads, to the end that safety, health and comfort of the general public and employees may be preserved and that dangerous or un-

healthy conditions on trains or along the rights-of-way, yards and terminals, if found to exist, may be abated and removed by the order of the Commission.

" 'The Commission, on its own motion or on the petition of any citizen, shall have a hearing on the question embraced within this section, as to the presence of dangerous or unhealthy conditions of trains or along the right-of-way, yards and terminals of all commercial railroads and street railroads.

" 'It shall be the duty of the Commission, after the hearing, to order the abatement and removal of any dangerous or unhealthy condition, if found to exist, and to order improvements to be made remedying same, when such conditions are shown to be dangerous to the health and safety of the general public or the employees.' "

We are constrained to disagree with the learned trial judge as to the invalidity of the Act. This is not a case of the Legislature adopting an amendment to a statute that is not a part of the official Code; but one amending a section of the Code that was formally adopted by an Act of the Legislature. When any section of the official Code is amended the members of the Legislature are presumed to know the nature of the section sought to be amended. No question is made in the instant case that the amendatory Act is not germane to sections of the Code referred to.

In *Dykes* v. *Hamilton County*, 183 Tenn. 71, 191 S. W. (2d) 155, 156, it was held: "The Legislature is under same obligation to observe Constitution as Courts, and presumption arises that Legislature intended to pass a constitutional statute."

This question has been considered in many of our cases and the ruling has been contrary to the Railway's contention.

In *State* v. *Runnels*, 92 Tenn. 320, 325, 21 S. W. 665, the caption of the Act was "An Act to amend Section 4652, Subsection 16 of the Code of Tennessee." Acts 1889, c. 161. There is nothing here to give notice of what was in the body of the Act. The Court held it constitutional.

In *Basham* v. *Southeastern, etc.*, 184 Tenn. 532, 201 S. W. (2d) 678, 680, it was insisted that the caption of the Act assailed "fails to cite the title or substance of the law it seeks to amend." The caption read, " An Act to amend Section 6856 of the Official Code of the State of Tennessee." Pub. Acts 1943, c. 120. In response the Court said:

"That an Act which fails to comply with this constitutional requirement is invalid needs no argument, but it is well settled that a reference in the caption to the section of the Code of Tennessee proposed to be amended is sufficient to comply with the requirements of Section 17, Article 2, of the Constitution. *State* v. *Runnels*, 92 Tenn. 320, 21 S. W. 665; *Gamble* v. *State*, 159 Tenn. 446, 19 S. W. (2d) 279; *Texas Co.* v. *Fort*, 168 Tenn. 679, 80 S. W. (2d) 658, 659. The Code of 1932 is now the 'Official Code of the State of Tennessee.'

"Counsel argue at length, and earnestly, that such a reference is uninforming and fails to satisfy the purpose of the requirement, but this specific question has been too long settled to admit of further debate."

The next contention of appellants is that there was material evidence to support the order of the Commission and that Chapter 130 of the Public Acts of 1939 was "sufficiently broad to grant the Commission the power which it attempted to exercise." The trial judge overruled this contention and the Commission assigned it as error.

In deciding the question here presented we concede that there is some material evidence to support the com-

plaint made before the Commission by the three citizens of Paris who are parties to this proceeding. The evidence purports to show that the "team track" constituted a nuisance in that citizens were disturbed by loud noises, lack of toilet facilities for employees of the Railway and others, and dangerous to those who crossed the track at a particular grade crossing.

We find from the record that this proceeding initially was an application to the Commission to abate a nuisance. While it may not be stated in so many words, that was the effect of it. The Commission granted the relief sought, undertaking to exercise a judicial function by ordering the Railway to abandon its property, the "team track," and to locate it elsewhere.

 It is not at all important in deciding this question to consider whether there was a trial in the Circuit Court under the common law writ of *certiorari* or under the statutory writ pursuant to Code, Secs. 9008-9018. If the order of the Commission was without authority of law, it is a nullity. We are not substituting our opinion in the instant case for that of the Commission upon any issue of fact involving reasonable regulation. The statutes creating the Commission, including Chapter 130, Public Acts of 1939, confers upon it very broad regulatory powers over utilities and railroads, but it can exercise no authority that is outside or beyond the express provision of the statute. *Nashville, C. & St. L. Ry.* v. *Hannah*, 160 Tenn. 586, 590, 27 S. W. (2d) 1089, 70 A L. R. 837.

Whatever authority the Commission may have had to enter the order in question is found in the Code sections above mentioned. The Act confers upon the Commission certain police powers, authorizing it to order the correction and abatement of unhealthy conditions "on trains or along the rights-of-way, yards and terminals," etc.;

"when such conditions are shown to be dangerous to the health and safety of the general public or the employees."

■ ■ We find this provision of the Act is valid as a reasonable regulation, and so long as the Commission exercises such limited authority, its orders must and will be sustained. The courts will refuse to disturb the findings of the Commission "where there is material evidence to support conclusions that are neither arbitrary nor unlawful." *Dunlap* v. *Dixie Greyhound Lines,* 178 Tenn. 532, 538, 160 S. W. (2d) 413, 415.

The appellants have cited for our consideration *Erie R. Co.* v. *Board of Public Utilities Commission,* 254 U. S. 394, 41 S. Ct. 169, 65 L. Ed. 322, in which the Court sustained an order of the Utilities Commission in directing the Railroad to improve certain grade crossings. The Court held that regardless of the expense to the Railroad, if the crossings were dangerous to the public, the order would have to be obeyed. It is insisted that this case furnishes authority for the order now before us. To this we cannot agree. In this case there was no order directing the Railroad to abandon its property, but to pay its proportion of the expense of erecting an overpass at a dangerous crossing.

■ Under our statute there is no authority given the Commission to order the Railway to abandon its property and seek to locate its railroad facilities in some other place. Moreover, such an order is made in an attempt to exercise judicial power which is plainly not conferred by Code, Section 5449, as amended. The delegation of judicial power is not admissible. Cooley, Constitutional Limitations, Vol. 2, p. 863; *Gough* v. *Dorsey,* 27 Wis. 119.

■ In Sutherland on Statutory Construction, Vol. 1, Section 304, it is said: "Delegations of legislative

authority to health boards are therefore almost always sustained; but if there is a conferring of a judicial power then even though the subject matter and the agency charged with regulation are considered appropriate, the power granted may be held invalid because it involves a judicial function.''

See *State* v. *Armstrong*, 35 Tenn. 634; *Reelfoot Lake Levee District* v. *Dawson*, 97 Tenn. 151, 36 S. W. 1041, 34 L. R. A. 725; *Malone* v. *Williams*, 118 Tenn. 390, 103 S. W. 798, 121 Am. St. Rep. 1002.

In *State* v. *Del Rio Turnpike Co.*, 131 Tenn. 600, 175 S. W. 1143, 1144, the Court had under consideration the power of the Government to abate a nuisance by destruction of property. It was held that ''the only justification lies in the element of overruling necessity.''

In Cooley, Constitutional Limitations, 7th Ed., p. 518, the rule is stated in the following language: ''Nor can a party by his conduct so forfeit a right that it may be taken from him without judicial proceedings, in which the forfeiture shall be declared in due form.''

In *State* v. *Del Rio, etc., supra*, the Court quotes with approval the following holding in *Detroit* v. *Detroit & H. Plank Road Co.*, 43 Mich. 140, 5 N. W. 275: ''It cannot be necessary at this day to enter upon a discussion in denial of the right of the government to take from either individuals or corporations any property which they may rightfully have acquired. In the most arbitrary times such an act was recognized as pure tyranny, and it has been forbidden in England ever since Magna Charta, and in this country always. It is immaterial in what way the property was lawfully acquired; whether by labor in the ordinary avocations of life, by gift or descent, or by making profitable use of a franchise granted by the State. It is enough that it has become

private property, and it is then protected by 'law of the land.' "

The only authority conferred upon the Commission by Section 5449, as amended, is to order the Railway to clean up any unsanitary conditions that may exist in depots, terminal yards, railroad cars, tracks and right-of-way, when the conditions complained of are shown to be detrimental to public health; and to order the abatement or correction of any condition that may be regarded as unsafe to the general public. There is nothing in the statute authorizing the Commission to order the abandonment by the Railway of its side tracks or switch tracks as a means of insuring proper sanitary conditions; or to force it to abandon said "team track" because of the noise and smoke of switch engines. No judge of any court of law or equity has ever had the judicial temerity to order the destruction or abandonment of a house because of the evil practices of the occupants or for failure of the owners to correct unsanitary conditions. Able counsel for appellants fail to cite any case where any Commission has ever ordered a railroad to abandon switch tracks, yards and terminals because of noises and smoke emanating from them and alleged to be injurious to public health; and no judicial tribunal has ever thought of entering such a judgment.

While railroad and terminal companies may be held liable in damages to owners of adjacent property for the careless and negligent operation of its terminals, amounting to a nuisance (*Terminal Co. v. Lellyett*, 114 Tenn. 368, 85 S. W. 881), the power to order the abandonment and consequent destruction of such property has never been exercised; and yet the Commission now claims the power to order the abandonment and removal of switch yards, side tracks, etc., for the same reason.

It thus undertakes to exercise a judicial function that is superior to that of the Courts of this State. It is not conceivable that the Legislature ever intended to confer upon the Railroad & Public Utilities Commission any such authority.

The action of the trial judge in holding Chapter 130, Public Acts of 1939, to be unconstitutional is error. But the judgment of the Trial Court must be sustained because the Commission's order is void, the same being without any lawful authority.

Affirmed.

All concur.