**GENERAL PORTLAND, INC., Appellee,**

v.

**CHATTANOOGA–HAMILTON COUNTY AIR POLLUTION CONTROL BOARD et al., Appellants.**

Court of Appeals of Tennessee, Eastern Section.

April 2, 1976.

Certiorari Denied by Supreme Court Oct. 4, 1976.

James F. Turner, Josiah Baker, Chattanooga, for appellants.

Stophel, Caldwell & Heggie, Chattanooga, for appellee.

## OPINION

PARROTT, Presiding Judge (E.S.)

Purportedly acting pursuant to the Tennessee Air Quality Act (T.C.A. 53–3408—53–3422) and particularly T.C.A. 53–3422, the County Council of Hamilton County enacted the Hamilton County Air Pollution Control Regulation. The purpose of the regulation as stated in Section 1–B is "to provide a program of air pollution prevention, abatement, and control."

This regulation created the Chattanooga-Hamilton County Air Pollution Control Board and a Bureau of Air Pollution Control. The administration of the air pollution control regulation is the overall duty and responsibility of both bodies.

T.C.A. 53–3422 provides in pertinent part:

Any municipality or county in this state may enact, by ordinance or resolu-

tion, air pollution control regulations not less stringent than the standards adopted for the state pursuant to §§ 53–3408— 53–3422. However, before such ordinances and regulations shall become effective, such municipality or county must apply for and receive from the board an exemption . . . .

Section 9, Rule 12 of the Hamilton County Air Pollution Control Regulation is as follows:

Rule 12—Regulation of Odors in the Ambient Air

Rule 12.1. An odor will be deemed "objectionable" when 15 percent or more of the people exposed to it believe it to be objectionable in usual places of occupancy based on a sample size of at least 20 people or if fewer than 20 people are exposed, when a minimum of three people exposed to it believe it to be objectionable.

Rule 12.2. No person shall cause, suffer, allow or permit emission such as to cause an "objectionable" odor on or adjacent to residential, recreational, institutional, retail sales, hotel or educational premises.

Rule 12.3. No person shall cause, suffer, allow or permit emission such as to cause an "objectionable" odor on or adjacent to premises other than those listed in Rule 12.2 unless air containing such odorous matter is diluted with four or more volumes of odor-free air.

In December of 1971, the Chattanooga-Hamilton County Air Pollution Control Bureau served notice on General Portland Cement Company, Signal Mountain Portland Cement Division (now General Portland, Inc.) charging that on the 4th, 12th, and 17th of November that company "did cause, suffer, allow, or permit emission such as to cause an objectionable odor from your plant on Suck Creek Road," in violation of Section 9, Rule 12.

At the conclusion of the hearing on the charges, the Board found General Portland in violation of the regulation. The Board ordered "General Portland Cement Company to cease and desist all operations at the Signal Mountain Portland Cement Division in Hamilton County effective 12:00 noon, December 15, 1971 unless prior thereto a corporate surety bond in the amount of $10,000.00 payable to Hamilton County Tennessee is posted with the Chattanooga-Hamilton County Air Pollution Control Board, said bond to be with a corporate surety in a form acceptable to the Board. Forfeiture to be conditioned upon any further violation of the provisions of the Section 9, Rule 12 of the County Regulation." Portland posted the specified bond, conditioned as directed by the Board, on December 15, 1971.

It appears that the odor emitted was attributable to sulphur compounds which were discharged from Portland's smokestacks as a result of burning coal that contained sulphur. As the learned chancellor found in a careful and thorough memorandum opinion, the record shows that after extended and expensive research and development, Portland perfected monitoring systems which effectively measured and controlled the quantity of hydrogen sulfide ($H_2S$) and sulphur dioxide ($SO_2$) emitted. Apparently those systems properly performed that function from December 15, 1971, until January 26, 27 and 28 of 1974.

On February 11, 1974, the Board gave Portland notice charging that on January 26, 1974, from about 7:00 a. m. until noon, on January 27, 1974, from about 3:00 p. m. until 7:00 p. m., and on January 28, 1974, from about 6:00 a. m. until 10:00 a. m., ". . . you did cause, suffer, allow or permit emission such as to cause an objectionable odor from your plant on Suck Creek Road, Hamilton County, Tennessee" in violation of Section 9, Rule 12, of the Hamilton County Air Pollution Control Regulation. Following hearings on March 4, 1974, and April 1, 1974, the Board found Portland had violated the regulation on January 26 and 28, 1974, as charged in the

notice, but had not violated it on January 27, 1974. The Board's order, entered April 5, 1974 nunc pro tunc for the 1st day of April, "ORDERED that Special Counsel for the Chattanooga-Hamilton County Air Pollution Control Board be, and hereby is, instructed, after consultation with the County Attorney for Hamilton County, to institute appropriate legal action for forfeiture upon the bond previously posted with the Bureau."

Accordingly, the Board's counsel and the County Judge of Hamilton County filed suit in the chancery court of that county on April 22, 1974, against Portland and Travelers Indemnity Company seeking forfeiture of the above-mentioned $10,000.00 bond which had been filed by the defendants on December 15, 1971.

On May 30, 1974, Portland petitioned the Chancery Court of Hamilton County for, and was granted, writs of certiorari and supersedeas to review the Board's decision and order seeking forfeiture of the bond.

After considering the record of the proceedings before the Board, the chancellor held the Board was without authority to require the posting of a bond and declared same null and void ab initio. Also, the chancellor held Section 9, Rule 12 of the Hamilton County Air Pollution Control Regulation to be in violation of the Fourteenth Amendment of the United States Constitution and Article 1, Section 8 of the Constitution of the State of Tennessee.

The Chattanooga-Hamilton County Air Pollution Control Board has appealed from the chancellor's decree.

■ We agree with that part of the chancellor's decree which finds the Board did not have express or implied authority to require General Portland to post the $10,-000.00 bond. Further, we believe, as the chancellor did, that it was proper to cancel the bond and relieve General Portland of any financial obligation imposed thereby.

■ Administrative agencies have only such power as is granted them by statute, and any action which is not authorized by the statutes is a nullity. *Pharr v. Nashville, C. & St. L. Ry.*, 186 Tenn. 154, 208 S.W.2d 1013 (1948); *Tennessee-Carolina Transportation, Inc. v. Pentecost*, 206 Tenn. 551, 334 S.W.2d 950, 953 (1960); *Boyce v. Williams*, 215 Tenn. 704, 389 S.W.2d 272 (1965); 1 Am.Jur.2d, Administrative Law, Sec. 70.

The Tennessee Air Quality Act expressly provides that violations of the Act are to be punishable by a fine of not less than $50.00 nor more than $1,000.00, with each day of violations being a separate offense. Upon a determination that a violation constitutes a public nuisance, such nuisance may be abated as provided by the general law. T.C.A. 53–3419. The Act, by Sec. 3418, provides the right to institute a civil action for injunctive relief to prevent any violation of a rule, regulation or order promulgated under the Act. A reading of the Act clearly shows the only enforcements for violations applicable to this case[1] are: a fine, an action to abate a nuisance, or an action for an injunction. These methods being the only ones allowed by the Act, all others must be considered as being illegal. By no stretch of the imagination can these provisions of the Act be logically construed to authorize the exacting of bond as was done in this case or the forfeiture of the bond.

■ It is not arguable that the provisions of Sec. 3422, permitting "regulations not less stringent than standards adopted by the state . . . ." empower the Board to require the posting of a bond for a viola-

1. T.C.A. 53–3416 permits the commissioner of public health, with the concurrence of the technical secretary and approval of the governor, to issue an emergency order to discontinue immediately the emission of air contaminants.

T.C.A. 53–3423—any city, town or county having a population of 600,000 or more (federal census 1960 or subsequent census) is authorized to enact ordinances or regulations not less stringent than the provisions of the Tennessee Air Pollution Control Act punishable as misdemeanors.

**914**

tion. The "less stringent" requirement clearly pertains to "standards" and not to penalties or enforcement methods.

 An administrative agency such as this board has no inherent or common law powers. Being a creature of statute, it can exercise only those powers conferred expressly or impliedly upon it by statute. In this absence of statutory authority, administrative agencies may not enforce their own determinations. Administrative determinations are enforceable only by the method and manner conferred by statute and by no other means. The exercise of any authority outside the provisions of the statute is of no consequence. *Tennessee Transportation, Inc. v. Pentecost, supra; Pharr v. Nashville, C. & St. L. Ry., supra*; 2 Am. Jur.2d, Administrative Law, Secs. 70 and 506.

Our determining the Board did not have authority to require the posting or forfeiture of the bond is depositive of the real issues in this case. Therefore, it is unnecessary to address the asserted constitutional question.

 It is well settled that a court will not pass on the constitutionality of a statute, or any part of one, unless it is absolutely necessary for the determination of the case and of the present rights of the parties to the litigation. *State v. Murray*, 480 S.W.2d 355 (Tenn.1972); *West v. Carr*, 212 Tenn. 367, 370 S.W.2d 469 (1963); *State v. National Optical Stores Co.*, 189 Tenn. 433, 225 S.W.2d 263 (1950).

Applying the above rules, we affirm only that part of the chancellor's decree cancelling and holding null and void the bond.

Let the costs incident to this appeal be taxed to the appellant.

GODDARD, J., and DAVIS, Special J., concur.