## BELLSOUTH TELECOMMUNICATIONS, INC.

v.

## The TENNESSEE REGULATORY AUTHORITY.

Court of Appeals of Tennessee, Middle Section, at Nashville.

February 14, 2002 Session.

July 16, 2002.

Permission to Appeal Denied by Supreme Court Dec. 23, 2002.

---

**3.** Act of Feb. 28, 1945, ch. 135, § 1, 1945 Tenn. Pub. Acts 416, 417 (codified at 4 Williams Code of Tennessee § 7182.25 (Supp. 1952)).

R. Dale Grimes, Jonathan C. Stewart, and Guy M. Hicks, Nashville, Tennessee; Patrick Turner, Atlanta, Georgia, for the appellant, BellSouth Telecommunications, Inc.

J. Richard Collier and Lynn Questell, for the appellee, Tennessee Regulatory Authority.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Timothy C. Phillips, Assistant Attorney General, for the appellee, Office of the Tennessee Attorney General Consumer Advocate and Protection Division.

Henry Walker, Nashville, Tennessee, for the appellee, The Tennessee Payphone Owners Association.

## OPINION

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and VERNON NEAL, Sp. J., joined.

The only remaining question in this appeal concerns the authority of the Tennessee Regulatory Authority (TRA) to order the payment of interest on payphone rate refunds after the TRA found that the ratepayers had been overcharged. We find that Tenn.Code Ann. § 65–5–203(c) gives the TRA the requisite authority.

In response to a series of orders from the Federal Communications Commission (FCC) requiring the states to reclassify payphones and eliminate subsidies associated with payphone operations, the TRA initiated proceedings to determine tariff rates for payphone owners. BellSouth filed a tariff for payphone usage on February 29, 1997 to take effect on April 1, 1997. The Tennessee Payphone Owners Association (TPOA) filed a petition to intervene, and the TRA granted the petition but approved the tariff pending a hearing.

On June 26, 1997, the TPOA filed a motion for a continuance so that it could consult with expert witnesses and prepare for the hearing. The pre-hearing officer granted the motion on July 8, 1997. On September 3, 1997, at a status conference, the Tennessee Attorney General Consumer Advocate and Protection Division ("Consumer Advocate Division") requested a continuance until after the first of the year. BellSouth opposed the delay, but the pre-hearing officer granted the request and established a new procedural schedule.

The parties then filed an Agreed Motion for Continuance on March 4, 1998. The reason cited was to wait for the completion of other proceedings that dealt with the costs for various BellSouth services, including payphone services. The motion also stated that the final rates would be retroactive to April 15, 1997 as required by the FCC in its Second Waiver Order, whereby local exchange companies could continue to charge their current tariffs so long as they agreed to reimburse the payphone owners for any overcharges when

new tariffs were finally set. The pre-hearing officer granted this motion on March 27, 1998.

The BellSouth payphone tariff docket was inactive until the TPOA filed a request for proceedings to be reconvened on March 21, 2000. On June 22, 2000, the TPOA filed a Motion for Interim Relief due to the amount of tariff they were paying for payphone service. The pre-hearing officer filed an order reconvening the docket on July 21, 2000. This order also denied TPOA's Motion for Interim Relief.

The TRA heard oral arguments on October 25, 2000. At the oral arguments, TPOA verbally moved for prejudgment interest. The Directors asked TPOA to file a written request, which it did on October 26, 2000. The TPOA relied upon Tenn. Code Ann. § 47–14–123, styled "Prejudgment Interest," in support of its motion. BellSouth filed a response arguing that the TRA lacked authority to award prejudgment interest under Tenn.Code Ann. § 47–14–123.

On February 1, 2001, the TRA entered an Interim Order in which it ordered Bell-South to reduce its payphone access line rates and to reimburse its customers for the amount they had been overcharged. The order required BellSouth "to pay as reimbursement any overpayment since April 15, 1997 adjusted to account for both inflation and the time value of money." Specifically, the amount set by the order was six percent (6%) annual interest on all overpayments.

The courts have often pointed out that administrative agencies can only exercise those powers specifically granted to them by statute or arising by necessary implication therefrom. In *BellSouth Telecomm.*

*v. Greer*, 972 S.W.2d 663, 680 (Tenn.Ct. App.1997) we said:

> The Commission, like any other administrative agency, must conform its actions to its enabling legislation. *Tennessee Publ. Serv. Comm'n v. Southern Ry.*, 554 S.W.2d 612, 613 (Tenn.1977); *Pharr v. Nashville, C. & St. L. Ry.*, 186 Tenn. 154, 161, 208 S.W.2d 1013, 1016 (1948). It has no authority or power except that found in the statutes. *Tennessee–Carolina Transp., Inc. v. Pentecost*, 206 Tenn. 551, 556, 334 S.W.2d 950, 953 (1960). While its statutes are remedial and should be interpreted liberally, *see* Tenn.Code Ann. § 65–4–106 (Supp. 1996), they should not be construed so broadly as to permit the Commission to exercise authority not specifically granted by law. *Pharr v. Nashville, C. & St. L. Ry.*, 186 Tenn. At 161, 208 S.W.2d at 1016.

The Supreme Court of Tennessee has held:

> Any authority exercised by the Public Service Commission must be as the result of an express grant of authority by statute or arise by necessary implication from the expressed statutory grant of power. *Pharr v. Nashville, Chattanooga and St. Louis Railway*, 186 Tenn. 154, 208 S.W.2d 1013 (1948); *Nashville, Chattanooga and St. Louis Railway v. Railroad and Public Utilities Commission et al.*, 159 Tenn. 43, 15 S.W.2d 751 (1929). In either circumstance, the grant of power to the Commission is strictly construed.

*Tennessee Publ. Serv. Comm'n v. Southern Ry. Co.*, 554 S.W.2d 612, 613 (Tenn. 1977).

The TPOA initially requested pre-judgment interest pursuant to Tenn.Code Ann. § 47–14–123,[1] but the TRA did not base its

---

1. **Prejudgment interest.**—Prejudgment inter-

est, i.e., interest as an element of, or in the

decision on that statute. On appeal Bell-South devotes a considerable part of its initial brief to a discussion of why that statute does not apply, and neither the TPOA nor the TRA insist that it does. Therefore, we will pass on to the real issue.

Closer to the TRA's home base, its governing acts contains Tenn.Code Ann. § 65–5–203 which applies to situations where a utility increases existing rates or changes or alters any existing classification. Subsection (a) of the act allows the TRA to suspend the rates for three months, and more if needed, while the TRA investigates to determine if the change or alteration is just and reasonable. If the TRA has not completed its investigation within six months, subsection (b) allows the utility to place the increased rates into effect or to make the change or alteration, subject to the TRA's authority to order a refund if it ultimately finds that any portion of the increase, change, or alteration should be disallowed. Subsection (c) of the act provides in its entirety:

> In the event the authority, by order, directs any utility to make a refund, as provided in subsection (b), of all or any portion of such increase, change or alteration, the utility shall make the same within ninety (90) days after a final determination of the proceeding by final order of the authority or, if the matter be appealed, by final order of the appellate court, *with lawful interest thereon.* (Emphasis added.)

Although this section has been in the code since 1973, it seems that no one raised it in the proceedings below. Therefore, the TRA in its order relied on other, more general, statutes and BellSouth did not discuss Tenn.Code Ann. § 65–5–203(c) in its initial brief on appeal. The first mention of the statute can be found in TPOA's appellee's brief. In its reply brief BellSouth asserts that the statute applies to only a very narrow set of circumstances not applicable here. In BellSouth's view Tenn.Code Ann. § 65–5–203(c) only applies where a utility increases its rates and implements those rates before the TRA completes its review under Tenn.Code Ann. § 65–5–203(a). In this case, of course, BellSouth did not propose to increase payphone rates, it was ordered to establish separate rates for payphones pursuant to a directive from the FCC.

But we think that the subject proceeding is different from the proceeding described in Tenn.Code Ann. § 65–5–203 only in the way it started. The impetus was an FCC order rather than BellSouth's act of seeking a rate hike. After that, the case proceeded according to the statute. BellSouth established rates that were in effect subject to being refunded when the TRA completed its investigation. Although the outside limit for the TRA to complete its investigation under Tenn. Code Ann. § 65–5–203(a) is nine months, and the hearing had been continued over BellSouth's opposition, in March of 1998 the parties agreed to another continuance to await the completion of other proceedings, "provided that no party would be prejudiced by the delay." In addition, the FCC had granted a limited waiver of its

nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum; provided, that with respect to contracts subject to § 47–14–103, the maximum effective rates of

prejudgment interest so awarded shall be the same as set by that section for the particular category of transaction involved. In addition, contracts may expressly provide for the imposition of the same or a different rate of interest to be paid after breach or default within the limits set by § 47–14–103.

previous order requiring the new tariffs to be in place by April 15, 1997 on the condition that "a LEC who seeks to rely on the waiver granted in the instant order must reimburse its customers or provide credit from April 15, 1997 in situations where the newly tariffed rates, where effective are lower than the existing tariffed rates." We think Tenn.Code Ann. § 65–5–203(c) applies to this proceeding and provides the statutory authority for the TRA's action in ordering BellSouth to pay interest.

We affirm the TRA's order requiring BellSouth to pay interest on the amounts it had overcharged its payphone customers. We remand the cause to the TRA for any further proceedings that may become necessary. Tax the costs on appeal to Bell-South.