IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 3, 1999 Session

# BELLSOUTH ADVERTISING & PUBLISHING CORPORATION v. TENNESSEE REGULATORY AUTHORITY, ET AL.

**Appeal from the Tennessee Regulatory Authority**
**at Nashville, Tennessee**
**Nos. 96-01692 & 98-00654**

---

**No. M1998-00987-COA-R12-CV & M1998-01012-COA-R12-CV**
**Filed February 16, 2001**

---

In these cases consolidated on appeal, Bellsouth Advertising & Publishing Corporation (BAPCO) appeals from the action of the Tennessee Regulatory Authority requiring it to brand the covers of its "White Pages Directory" with the names and commercial logos of local telecommunication companies in competition with its parent corporation Bellsouth Telecommunications, Inc. (BST). We reverse the judgment of the Tennessee Regulatory Authority. Judge Cottrell dissents.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Tennessee Regulatory Authority Reversed**

WILLIAM B. CAIN, J., delivered the opinion of the court. WILLIAM C. KOCH, JR., J., filed a concurring opinion with Judge Cain specifically concurring in Part VI thereof. PATRICIA J. COTTRELL, J., filed a dissenting opinion.

Paul S. Davidson and Guilford F. Thornton, Jr., Nashville, Tennessee, and James F. Bogan, III and Daniel J. Thompson, Jr., Atlanta, Georgia, for the appellant, Bellsouth Advertising & Publishing Corporation.

Henry Walker and K. David Waddell, Nashville, Tennessee, for the appellees, Nextlink Tennessee, L.L.C. and Tennessee Regulatory Authority.

## OPINION

This case represents the consolidation of two different, but intricately linked, administrative appeals concerning BellSouth Advertising & Publishing Corporation (BAPCO). The first, *BellSouth Advertising and Pubublishing Corp. v. Tennessee Regulatory Authority, et al* (the AT&T case hereinafter) concerned a claim originally brought by American Telephone & Telegraph, Inc. (AT&T) seeking to have its name and logo placed on the covers of the "White Pages" directories published

by BAPCO. By order entered March 19, 1998, the Tennessee Regulatory Authority (TRA) Required BAPCO to place AT&T's name and logo on the cover of its "White Pages".

The aforementioned AT&T declaratory order was interpreted and applied in a proceeding wherein NEXTLINK L.L.C., and similarly situated telecommunications companies sought to "brand" BAPCO's "White Pages" cover along with AT&T. Because of the substantial similarity of the issues, these two cases were consolidated for consideration in this court. While certain issues raised in the Nextlink case are of no consequence in the AT&T case, and thus must be considered separately, the crucial issues are common to both cases.

This crucial, sub-constitutional issue presents the question of whether or not the TRA, under Tennessee law and Tennessee Regulatory Authority Rule 1220-4-2-.15, can compel BellSouth Advertising and Publishing Corporation to display, on the cover of its "White Pages" telephone directory, the name and commercial logo of local telecommunication companies that are competitors of BellSouth Telecommunications, Inc., giving such competing names and commercial logos equal prominence with the "BellSouth" name and logo.

I.      HISTORICAL BACKGROUND

In the decade of the 1990's, many states, including Tennessee, were running legislatively parallel to the Congress of the United States in converting, from a monopoly environment to a competitive environment, the providing of local telephone services.

On January 25, 1999, the United States Supreme Court issued its decision in *AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366 (1999). This decision was a detailed construction of the Telecommunications Act of 1996, 47 U.S.C. § 251 *et seq.* Justice Thomas, concurring in part and dissenting in part, traced the history of telecommunications in the United States and the effect of the Telecommunications Act of 1996.

> From the time that the commercial offering of telephone service began in 1877 until the expiration of key patents in 1893 and 1894, Alexander Graham Bell's telephone company--which came to be known as the American Telephone and Telegraph Company--enjoyed a monopoly. In the decades that followed, thousands of independent phone companies emerged to fill in the gaps left by the telephone giant and, in most larger markets, to build rival networks in direct competition with it. As competition developed, many municipalities began to adopt ordinances regulating telephone service.

> During the 1900's, state legislatures came under increasing pressure to centralize the regulation of telephone service. Although the quasicompetitive system had significant drawbacks from the consumers' standpoint--principally the refusal of competing systems to interconnect--perhaps the strongest advocate of state regulation

was AT&T itself. The company's arguments that telephone service was naturally monopolistic and that competition was resulting in wasteful duplication of facilities appealed to Progressive-era legislatures. By 1915, most States had established public utility commissions and charged them with regulating telephone service. Over time, the Bell Companies' policy of buying out independent providers coupled with the state commissions' practice of prohibiting competitive entry led back to the monopoly provision of local telephone service.

. . . .

In the Communications Act of 1934, 48 Stat. 1064, as amended, 47 U.S.C. § 151 *et seq.*, Congress transferred authority over interstate communications from the ICC to the newly created Federal Communications Commission (FCC or Commission). As in the Mann-Elkins Act, Congress chose not to displace the States' authority over intrastate communications. . . .

Congress enacted the Telecommunications Act of 1996 (Act), Pub. L. 104-104, 110 Stat. 56, against this backdrop. To be sure, the 1996 Act marked a significant change in federal tele-communications policy. Most important, Congress ended the States' longstanding practice of granting and maintaining local exchange monopolies. It also required incumbent local exchange carriers to allow their competitors to access their facilities in three different ways. . . . [I]ncumbents must: interconnect their networks with requesting carriers' facilities and equipment, provide nondiscriminatory access to network elements on an unbundled basis at any technically feasible point, and offer to resell at wholesale rates any telecommunications service that they provide to subscribers who are not telecommunications carriers. The Act sets forth additional obligations applicable to all telecommunications carriers and all local exchange carriers. To facilitate rapid transition from monopoly to competitive provision of local telephone service, Congress set forth a process to ensure that the incumbent and competing carriers fulfill these obligations.

Section 252 sets up a preference for negotiated interconnection agreements. To the extent that the incumbent and competing carriers cannot agree, the Act gives the state commissions primary responsibility for mediating and arbitrating agreements. Specifically, Congress directed the state commissions to mediate disputes between carriers during the voluntary negotiation period and--after the negotiations have run their course--to arbitrate any "open issues." In conducting these arbitrations, state commissions are directed to ensure that open issues are resolved in accordance with the requirements of §251, "establish . . . rates for interconnection, services, or network elements" according to the standards that Congress set forth in §252(d), and to provide a schedule for implementing the agreement reached during arbitration.[1]

---

[1]As this extensive quotation is for historical background, many citations of supporting authority in the opinion have been omitted.

-3-

*AT&T Corp.,* 525 U.S. at 402-06. (Thomas, J., concurring in part and dissenting in part).

While both cases at bar are based on Tennessee law, it is well to note that this dispute first came before the TRA in 1996 when American Telephone and Telegraph Company filed a petition for arbitration against BellSouth Telecommunications, Inc. (BST), the incumbent local exchange carrier, under section 252 of the Federal Telecommunications Act of 1996. In this action, AT&T asserted that the T R A should resolve, under the federal act, the question of whether AT&T had the right to have its commercial logo displayed on the cover of directories published by BAPCO for BST. Following the lead of Georgia (Georgia PSC Docket No. 6801-U Sept. 26, 1996), Massachusetts (Order of Massachusetts DPU in NYTEX/AT&T/MCI/Sprint Arbitration Dec. 4, 1996), and North Carolina (Order of North Carolina Utilities Commission in AT&T/BST Arbitration Dec. 23, 1996), the TRA held that the directory cover issue was not arbitrable under the federal act and stated that "private negotiations are the preferred method of resolving this issue, and the parties are encouraged to resolve this matter through negotiation." Private negotiations, however, reached an impasse because AT&T would not agree to cease the display of its commercial logo on the covers of directories published by competitors of BAPCO.

## II.      CHRONOLOGY OF THE TENNESSEE LITIGATION

BAPCO is a wholly owned subsidiary of BellSouth Enterprises, Incorporated, which is itself a wholly owned subsidiary of BellSouth Corporation. BST is the "incumbent local exchange telephone company" as defined in our state act, Tennessee Code Annotated section 65-4-101(d) (1999) and is also a wholly owned subsidiary of BellSouth Corporation.

AT&T and interveners Nextlink Tennessee, L.L.C. (Nextlink), M.C.I. Telecommunications Corporation (MCI), and American Communications Services, Inc. (ACSI) are "competing telecommunications service providers" within the meaning of Tennessee Code Annotated section 65-4-101(e).

Both federal law [47 U.S.C. §271(c)(2)(B)(viii)] and Tennessee law [Tenn .Code Ann. § 65-4-124(c)] require BST to publish a directory of "White Pages", containing not only the names of its own subscribers but also the names of subscribers of competing carriers. It is undisputed that the "White Pages" of BellSouth are published in full compliance with both federal and state law. The "White Pages" directories required of BellSouth Telecommunications Company are, in fact, published by BAPCO under contract with BST. The issues in this case involve only the covers of BellSouth "White Pages" directories.

The Tennessee legislative parallel to the Telecommunications Act of 1996 actually predates the federal act. Chapter 408 of the Public Acts of 1995 became effective on June 6, 1995. This Tennessee act amended several sections of Title 65 of the Tennessee Code and established certain new sections relative to the regulation of telecommunications carriers in Tennessee. *See* Tenn. Code Ann. §§ 65-5-208 to -213 (1999).

Following the refusal of the TRA to arbitrate the "cover" issue under the federal act and the failure of negotiations between the parties, AT&T filed its petition for a declaratory ruling on December 16, 1996. This proceeding sought a decision from the TRA as to whether Tennessee Code Annotated sections 65-4-104, 65-4-114(1), 65-4-117(3) and 65-4-122(c), along with TRA Rule 1220-4-2-.15 apply to the covers of "White Pages" telephone directories, published and distributed on behalf of BST by BAPCO and containing the names and telephone numbers of customers of AT&T. In its petition, AT&T requested the TRA to convene a contested case under Tennessee law with BAPCO and BST as parties respondent. AT&T sought a decision from TRA regarding whether this statutory and rule authority required BAPCO to place AT&T's name and logo on the covers of such directories. Thereafter, TRA convened a contested case pursuant to Tennessee Code Annotated section 4-5-223 and Tennessee Code Annotated section 65-2-104.

In its petition, AT&T asserted:

[T]he TRA [should] issue a declaratory order declaring that telephone directories are an essential aspect of the telephone or telecommunications services of telephone utilities such as BST; and that the covers of directories, published and distributed by BAPCO on behalf of BST which include the names and numbers of customers of AT&T, must be nondiscriminatory and competitively neutral, and either must include the name and logo of AT&T in like manner to the name and logo of BST, or include no company's name and logo, including the name "BellSouth."

*In Re: Petition of AT&T for Declaratory Order*, Petition of AT&T to the Tenn. Regulatory Auth., No. 96-01692 (filed Dec. 16, 1996).

By order dated February 20, 1997, TRA granted the request of AT&T to convene a contested case proceeding with BST and BAPCO as party respondents. In the process, the TRA also granted intervention to MCI, ACSI and Nextlink so that each party would have an opportunity to participate in the proceeding. On July 17, 1997, the hearing was held before the TRA. On September 23, 1997, the TRA publicly deliberated and announced its decision. On March 19, 1998, the TRA issued its order holding that TPSC Rule 1220-4-2-.15 required the appearance of the name and logo of AT&T on the cover of the "White Pages" directory published by BAPCO under the same terms and conditions as were provided to BST by contract. On May 15, 1998, BAPCO filed its Petition for Review in this court.

III.     THE DECISION OF TRA

TRA Rule 1220-4-2-.15 provides in its entirety as follows:
(1)     Telephone directories shall be regularly published, listing the name[,] address, and telephone number of all customers, except public telephones and number unlisted at customer's request.

(2)     Upon issuance, a copy of each directory shall be distributed to all customers served by that directory and a copy of each directory shall be furnished to the Commission upon request.

(3)     The name of the telephone utility, the area included in the directory and the month and year of issue shall appear on the front cover. Information pertaining to emergency calls such as for the police and fire departments shall appear conspicuously in the front part of the directory pages.

(4)     The directory shall contain such instructions concerning placing local and long distance calls, calls to repair and information services, and location of telephone company business offices as may be appropriate to the area served by the directory.

(5)     Information operators shall have access to records which include all listed telephone numbers (except telephone numbers not listed or published at customer request) in the area for which they are responsible for furnishing information service.

(6)     In the event of an error in the listed number of any customer, the telephone utility shall intercept all calls to the listed number for a reasonable period of time provided existing central office equipment will permit and the number is not in service. In the event of an error or omission in the name listing of a customer, such customer's correct name and telephone number shall be in the files of the information or intercept operators and the correct number furnished the calling party either upon request or interception.

(7)     Whenever any customer's telephone number is changed after a directory is published, the utility shall intercept all calls to the former number for a reasonable period of time, and give the calling party the new number provided existing central office equipment will permit, and the customer so desires. Provided, however, the telephone utility may refuse to take such action for good and sufficient reason.

(8)     When additions or changes in plant, records or operations which will necessitate a large group of number changes are scheduled, reasonable notice shall be given to all customers so affected even though the additions or changes may be coincident with a directory issue.

(9)     The inside cover of the directory all contain the Commission's telephone number: 1-800-342-8359 (toll free).

This rule, adopted in 1968, long before federal and state statutory policy changes mandating the conversion from a monopolistic environment to a competitive environment in the provision of local telephone services, provides only that the cover of the "White Pages" directory should disclose the name of the telephone utility, the area included in the directory, and the month and year of issue of the directory. In the monopoly environment of 1968, there was only one telephone utility; that

utility was the only local service provider, and thus, it was the only telephone utility locally serving the customers listed in the directory.

The policy of the Tennessee Telecommunications Act of 1995 is stated as follows:

The general assembly declares that the policy of this state is to foster the development of an efficient, technologically advanced, statewide system of telecommunications services by permitting competition in all telecommunications services markets, and by permitting alternative forms of regulation for telecommunications services and telecommunications services providers. To that end, the regulation of telecommunications services and telecommunications services providers shall protect the interests of consumers without unreasonable prejudice or disadvantage to any telecommunications services provider; universal service shall be maintained; and rates charged to residential customers for essential telecommunications services shall remain affordable.

Tenn. Code Ann. § 65-4-123 (Supp. 1999).

The majority of the TRA held that the policy declarations in Tennessee Code Annotated section 65-4-123, together with proper construction of Rule 1220-4-2-.15, provide sufficient authority to compel BST through BAPCO to display, on the cover of its "White Pages" directory, the name and commercial logo of AT&T in equal prominence with the BellSouth name and commercial logo and on the same terms and conditions as are given by BAPCO to BST. The dissenting member of the TRA agreed that the end result was correct but felt that it should not be attained in a contested case construing the Rule but rather that a rule-making proceeding was needed to revise the Rule so as to apply in a competitive environment. This issue is so clearly drawn and articulated in the majority and dissenting opinions of the TRA that extensive quotation from the declaratory order is desirable in order to focus appellate consideration.

Chairman Greer, speaking for himself and Director Kyle, stated the majority position of the TRA in the declaratory order of March 19, 1998 as follows:

Following the disposition of the pending motions, each Director openly deliberated in great detail on the merits of the case and stated his or her position as to the proper disposition of the issues. After the deliberations were concluded, the motion as stated by Chairman Greer prevailed. The motion and supporting comments are as follows:

As a regulator in Tennessee, I am bound by the parameters of federal law, state law and existing rules of this Agency. However, I am also charged with the duty of promoting telecommunications competition in this state according to the [state and federal] Telecommunications Act[s] of 1995 and 1996, and with the duties of protecting the interest of both the consumers of Tennessee and the utility providers. Sometimes the fulfillment of all of these duties conflicts, not

only with each other but with the applicable laws involved. I feel that the production of one complete phone book containing the names and numbers of all customers, promotes competition, reduces consumer confusion and best serves the needs of Tennessee. I feel this solution of one complete directory fulfills my policy goals and I would encourage this action to be taken by the parties involved.

All of that said, however, I must now determine what I am allowed to do under the law. The original petition brought four (4) statutes and one (1) Tennessee Public Service Commission/TRA rule in question. And I will explore each of these.

First, [Tenn. Code Ann. §] 65-4-104 deals with the TRA's jurisdiction over public utilities. The TRA obviously has jurisdiction over BellSouth Telecommunications and the fulfillment of their obligations as a utility. By virtue of contract, then, BAPCO, as BellSouth's agent, becomes responsible for the fulfillment of BellSouth's utility obligations under the law. . . .

[Tenn. Code Ann. §] 65-4-114(1) empowers the Authority to require every public utility to provide safe, adequate and proper service, but it does not require that utility to provide such service to customers other than its own. This statute, then, in my opinion, is not really applicable to this case.

[Tenn. Code Ann. §] 65-4-117(3) enables the Authority, after hearing, by order in writing, to fix just and reasonable standards to be applied to any utility. This statute seems to be envisioning rules, which truly requires a rule-making proceeding. Thus, this statute is not applicable, in my opinion, to this case.

[Tenn. Code Ann. §] 65-4-122(c) mandates that a public utility shall not make or give any undue preference to anyone. However, this statute applies more to the ratepayers than to the utilities, as evidenced in New River Lumber Company versus Tennessee Railway, 1921, thus, this statute is not relevant to this case either.

Now, Tennessee Public Service Commission Rule [TRA Rule] 1220-4-2-.15 mandates that a telephone directory be published regularly containing the names and numbers of all customers and distributed to all customers served by that directory. The directory must have the name of the utility, the area served, and the month and year of issue on the cover. . . .

I have been charged with the interpretation of this rule in resolving this issue. I feel that it is important to note that this rule was created in 1968, long before the 1996 Telecommunications Act and the push for competition. Keeping this

in mind, and realizing that no more than one utility existed at the time of this statute to address, I believe that the plain language of the rule envisions the name and utility whose customers are inside the directory. Following the same logic, then, I believe that if more than one utility's customers are inside the same directory, then more than one utility's name would be on the cover. I do not believe I have the authority to allow a telephone book with no name on the cover.

The charges of law in this docket bring another important statute into focus, and that is [Tenn. Code Ann. §] 65-4-123. This statute discusses not only the policy of this state to permit competition in all telecom services markets, but also that this regulation shall protect the interest of the consumers. **This Agency has ruled that directory assistance is not a basic service for Tennessee consumers, therefore, in my opinion, the white pages listing is a basic service and an essential tool the customer needs to efficiently and fairly use the network.** This telephone directory, then, needs to be complete and as easy to understand as possible. In my opinion, the names of local providers on the cover would be helpful to consumers. This would not only serve as information, but would also promote competition by showing consumers they have a choice in service providers. This method also allows small companies to continue to provide service without the financial burden of having to produce their own directory. They may contract with another carrier or publisher to satisfy their TRA Rule requirements and still have their name on the cover of the directory.

Therefore, after reading all of the testimony and briefs filed in this docket, and after a hearing on the merits, and after contemplation of both my duties as a regulator and my interpretation of the applicable rules and the statutes, I feel that the name or names of the utility or utilities, whose customers are inside the directory, by contract, should be allowed to be included in the cover in the same format. So, if a carrier contracts with another carrier or publisher to have their customers included in combined directory, then the included carrier should have its name on the directory cover in a like format. **Thus, I move that AT&T be allowed to contract with BAPCO to have its name on the cover of the directory under the same terms and conditions as that of BellSouth's name. And further, BAPCO and/or BellSouth must offer the same terms and conditions to AT&T in a just and reasonable manner.**

*In Re: Petition of AT&T Communications*, Declaratory Order, Tenn. Regulatory Auth.,, No. 96-01692 (March 19, 1998) (citations and footnotes omitted)(emphasis in original).

Thus, does the majority of the TRA hold in clear and unambiguous language that the policy of Tennessee Code Annotated section 65-4-123 and Rule 1220-4-2-.15, in its present form, authorize the action sought by AT&T in a "contested case" proceeding for a declaratory order.

With equal clarity, Director Melvin Malone asserts that the result reached by the majority is correct but should be accomplished in a "rule-making" procedure rather than a "contested case" proceeding for a declaratory order.

Says Director Malone:

In this declaratory order action, AT&T has requested that the Authority issue a declaratory ruling on whether T.C.A. §§ 65-4-104, 65-4-114(1), 65-4-117(3), 65-4-122(c), or TRA Rule 1220-4-2-.15 require BellSouth to place AT&T's name and logo on the front cover of the local directory that is published by BellSouth Advertising and Publishing Company ("BAPCO") on behalf of BellSouth.

Consistent with the majority, in my opinion, this case turns upon the application of the Rule, as opposed to other state statutes relied upon by AT&T in this cause. The plain language of TRA Rule 1220-4-2-.15 mandates that "the name of the telephone utility" must appear on the front cover of the local phone directory. The controlling question here is whether the Rule requires BellSouth to place AT&T's name and logo on the cover of BellSouth's local phone directory, or the local phone directory published on its behalf, when AT&T's customers are listed in said directory.

Unlike the majority, however, I have concluded that applying the plain language of the Rule, irrespective of its original intent and purpose, in the current environment would result in each local telecommunications services provider distributing or providing, directly or indirectly, its own phone book with its name on the front cover to its customers. No law was submitted nor phalanx of language offered in this case that resulted in a metamorphic effect on the plain meaning or intent of the Rule into anything other than what it is. Nonetheless, I am persuaded that the imposition of such a daunting requirement as would be mandated by the plain language of the Rule and its original intent at this stage in Tennessee's transition to a competitive environment may result in crippling consequences to the development of competition.

For the foregoing and other reasons, I have concluded that the most appropriate path in this case is to declare that neither the Rule nor §§ 65-4-114(1), 65-4-117(3), or 65-4-122(c) require BellSouth to place AT&T's name and logo on the front cover of the local directory published by BAPCO on behalf of BellSouth when AT&T's customers are listed therein. Being ever mindful of the clear and unambiguous policy of the State of Tennessee to foster the development of an efficient, technologically advanced, statewide system of telecommunications services by permitting competition in all telecommunications services markets and this agency's general supervisory and

regulatory power, jurisdiction, and control under § 65-4-104, I am persuaded that the most judicious manner in which to proceed is with a rulemaking to revise TRA Rule 1220-4-2-.15 and/or to develop a rule to apply in a competitive environment.

*In Re: Petition of AT&T Communications*, Separate Opinion of Director Melvin Malone, Tenn. Regulatory Auth., No. 69-01692 (March 19, 1998) (footnotes omitted).

While Director Malone asserted that a rule-making procedure was the preferable way to dispose of the case, he chose in the end to join with the majority in result, observing "Hence, while I conclude that the path that I would choose to resolve this matter is more appropriate than that chosen by the majority, the result is the same - all competitors names on the front cover of Bell South's local phone Directory." *Id.*

## IV. JURISDICTION OF TENNESSEE REGULATORY AUTHORITY

The question in this case is not the method used by TRA in hearing and deciding this case, but rather whether or not TRA had jurisdiction to compel BAPCO against its wishes to display the name and commercial logo of AT&T on the cover of its "White Pages" directory. We conclude that neither federal nor state law provides the authority with such jurisdiction.

As stated *supra*, before this contested case was ever filed, AT&T had filed a petition for arbitration against Bellsouth Telecommunications, Inc. under section 252 of the Federal Telecommunications Act of 1996. The TRA held that the issue of whether or not AT&T was entitled to have its commercial logo displayed on the cover of directories published by BAPCO for Bellsouth Telecommunications Company was not a subject for arbitration under section 252 of the Federal Act. Administrative agencies in Alabama, Florida, Georgia, Kentucky, Illinois, Louisiana, Massachusetts, Mississippi, New Hampshire, New York, North Carolina, Oregon, Rhode Island, South Carolina, Texas and Vermont have reached the same conclusion. Administrative agencies in Arizona, Iowa, Kentucky, Montana, and Washington have concluded otherwise.

Inherent in the findings of the majority of state regulatory agencies considering the issue (including Tennessee in this case), is a finding that the cover of the incumbent's "White Pages" directory is not a "network element" within the meaning of 47 U.S.C. § 153 (29) which provides:

> The term "network element" means a facility or equipment used in the provision of a telecommunications service. Such term also includes features, functions, and capabilities that are provided by means of such facility or equipment, including subscriber numbers, databases, signaling systems, and information sufficient for billing and collection or used in the transmission, routing, or other provision of a telecommunications service.

47 U.S.C. § 153(29)(    ).

Bellsouth's obligation under the federal act is to provide "White Pages directory listings for customers of the other carrier's telephone exchange service." 47 U.S.C. § 271(c)(2)(B)(viii)(    ).

The TRA rightly acknowledges that the goal in all of the legislative law in these cases is to "unbundle" the network elements of an incumbent local exchange carrier in order to foster nondiscriminatory entry into the competive market of telecommunications services. With very little by the way of explanation, the TRA held that the branding of "White Pages" directory covers was in the nature of a network or utility function. This holding, if correct, brings the issue of directory cover branding within the ambit of the Telecomunications Act of 1996, the FCC rules regarding enforcement of the act's provisions, and Tennessee's Telecommunications Act of 1995.

The term "network element" is broadly defined to include more than simply the physical facilities and equipment of an ILEC. *AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366 (1999). Providing directory listings necessary to local customer service is in the nature of a "network element" to be provided at cost-based rate. *See AT&T of Va. v. Bell-Atlantic Va., Inc.*, 197 F.3d 663, 674 (4th Cir. 1999). Yet inherent in the TRA's ruling was the finding that the *branding* of the cover of a local white pages directory is an element of BST's network as well, and thus, must be provided to competing LEC's on an unbundled basis.

In this discussion the following is persuasive:

> There is a point, though, at which a particular service is too remote to justify inclusion as a network element. . . . Some things the CLEC's must do for themselves. The unbundling requirement is aimed at making available to CLEC's, those network features, which a CLEC needs to provide competitive local telephone service, . . . or which competitors could not otherwise duplicate in a timely manner or at a reasonable cost. The unbundling requirement ordinarily should not extend to general business services that can be replicated by competitors.

*MCI Telecomm. Corp. v. GTE Northwest, Inc.*, 41 F.Supp. 2d 1157, 1180-81 (D.Or. 1999).

The incumbent's "White Pages" directory *cover* is among "items that do not (as they must) meet the statutory definition of 'network element' " *AT&T Corp.*, 525 U.S. at 386.

So ends the federal inquiry in this case. We now turn to Tennessee law, primarily the Telecommunications Act of 1995 codified as part of Tennessee Code Annotated Title 65, chapters 4 and 5. First, it is well to observe that the Federal Telecommunications Act of 1996 is not preemptive of state legislation, but rather compatible therewith, and state law is preempted only to the extent that it conflicts with the federal act. *See Bellsouth Telecomm. v. Greer*, 972 S.W.2d 663, 671 (Tenn. Ct. App. 1997).

This Court has held:

The Commission, like any other administrative agency, must conform its actions to its enabling legislation. *Tennessee Pub. Serv. Comm'n v. Southern Ry.,* 554 S.W.2d 612, 613 (Tenn.1977); *Pharr v. Nashville, C. & St. L. Ry.*, 186 Tenn. 154, 161, 208 S.W.2d 1013, 1016 (1948). It has no authority or power except that found in the statutes. *Tennessee-Carolina Transp., Inc. v. Pentecost*, 206 Tenn. 551, 556, 334 S.W.2d 950, 953 (1960). While its statutes are remedial and should be interpreted liberally, *see* Tenn. Code Ann. § 65-4-106 (Supp.1996), they should not be construed so broadly as to permit the Commission to exercise authority not specifically granted by law. *Pharr v. Nashville, C. & St. L. Ry.,*, 186 Tenn. at 161, 208 S.W.2d at 1016.

*Bellsouth Telecomm.,* 972 S.W.2d at 680 (Tenn. Ct. App. 1997.)

The Supreme Court of Tennessee has held:

Any authority exercised by the Public Service Commission must be as the result of an express grant of authority by statute or arise by necessary implication from the expressed statutory grant of power. *Pharr v. Nashville, Chattanooga and St. Louis Railway*, 186 Tenn. 154, 208 S.W.2d 1013 (1948); *Nashville, Chattanooga and St. Louis Railway v. Railroad and Public Utilities Commission et al*, 159 Tenn. 43, 15 S.W.2d 751 (1929). In either circumstance, the grant of power to the Commission is strictly construed.

*Tennessee Pub. Serv. Comm'n v. Southern Ry. Co.*, 554 S.W.2d 612, 613 (Tenn. 1977).

As with the question of arbitration under the federal statute we are dealing in this case with a very limited issue. We are concerned not with the "White Pages" listings of competing local telecommunications service providers, which BST, as the incumbent local exchange telephone company, is required by both federal and state law to provide, but rather with the branding of the *cover* of such "White Pages" directory.

Tennessee Code Annotated section 65-4-124 provides in pertinent part as follows:

(a) All telecommunications services providers shall provide non-discriminatory interconnection to their public networks under reasonable terms and conditions; and all telecommunications services providers shall, to the extent that it is technically and financially feasible, be provided desired features, functions and services promptly, and on an unbundled and non-discriminatory basis from all other telecommunications services providers.

(b) Prior to January 1, 1996, the commission shall, at a minimum, promulgate rules and issue such orders as necessary to implement the requirements of subsection (a) and to provide for unbundling of service elements and functions, terms for resale, interLATA presubscription, number portability, and packaging of a basic local

exchange telephone service or unbundled features or functions with services of other providers.

(c) These rules shall also ensure that all tele-communications services providers who provide basic local exchange telephone service or its equivalent provide each customer a basic White Pages directory listing, provide access to 911 emergency services, provide free blocking service for 900/976 type services, provide access to telecommunications relay services, provide Lifeline and Link-Up Tennessee services to qualifying citizens of the state and provide educational discounts existing on June 6, 1995.

Tenn. Code Ann. § 65-4-125(a-c) (Supp. 1999).

The same reasons that impelled the TRA, and a majority of other state regulatory commissions, to reject arbitration of the branding of "White Pages" directory covers under the federal act impel the conclusion that branding of "White Pages" directory covers is not an essential public service, subject to regulation by the TRA. *National Merchandising Corp. v. Public Serv. Comm'n*, 5 N.Y.2d 485, 490, 158 N.E.2d 714, 716, 186 N.Y.2d 47, 50 (1959). The TRA is mandated by Code section 65-4-124(c) to, by rule, insure that each "customer" of all telecommunications service providers who provide basic local exchange telephone service get a "White Pages" directory listing, and it is undisputed in this record that Bellsouth and BAPCO have complied - rule or no rule - with this statutory mandate, which is the same mandate required by federal law.

The TRA held that under section 65-4-104 of the Code, it had jurisdiction over BST and the fulfillment of its obligation as a utility. It further held: "By virtue of contract, then, BAPCO, as Bellsouth's agent becomes responsible for the fulfillment of Bellsouth's utility obligations under the law." While it is correct to say that BST may not avoid the fulfillment of its statutorily mandated utility functions by either agency or contract, *See Smith v. Southern Bell Tele. and Tel. Co.*, 51 Tenn. App. 146, 151, 364 S.W.2d 952, 955 (1962); *Loring v. Bellsouth Adver. & Publ'g. Corp.*, 339 S.E.2d 372, 374 (Ga. Ct. App. 1985), it does not follow that TRA has jurisdiction to regulate the activities of BAPCO in non-utility endeavors.

At this point, the separate identity of BST and BAPCO becomes critical. Both are wholly owned subsidiaries of Bellsouth Corporation. BST is a "telecommunications services provider" under Title 65, Chapters 4-5 of Tennessee Code Annotated and thus subject to regulation by the TRA. BST is also an "incumbent local exchange" company under the Federal Telecommunications Act of 1996. On the other hand, BAPCO is not a public utility company, subject to regulation by Tennessee Regulatory Authority, but rather a corporation engaged in the competitive business of publishing telephone directories. Having fulfilled the utility obligations of BST by providing "each customer a basic White Page directory listing" [Tenn. Code Ann. § 65-4-124(c)], BAPCO has fulfilled all utility functions mandated by Tennessee statute and TRA has no further power under either state law or federal law to regulate the non-utility activities of BAPCO. *See U. S. West Communications, Inc. v. Minnesota Pub. Utils.*, 55 F.Supp. 2d 968, 983-985 (D. Minn. 1999).

-14-

Tennessee Regulatory Authority correctly held that sections 65-4-114(a), 65-4-117(3) and 65-4-122(c) of the Code, statutes relied on by AT&T in its petition for a declaratory ruling, were inapplicable to this case. The authority based its decision on the general policy statement of Tennessee Code Annotated section 65-4-123, the jurisdictional provisions of the Code section 65-4-104 and the provisions of TRA Rule 1220-4-2-.15. The rule is brought unchanged into a statutorily mandated competitive environment. As observed by Director Malone:

> [A]pplying the plain language of the Rule, irrespective of its original intent and purpose, in the current environment would result in each local telecommunications services provider distributing or providing, directly or indirectly, its own phone book with its name on the front cover to its customers. No law was submitted nor phalanx of language offered in this case that resulted in a metamorphic effect on the plain meaning or intent of the Rule into anything other than what it is.

Opinion Director Malone, Tenn. Regulatory Auth., *In Re: Petition of AT&T*.

It is well to add that this observation comports precisely with Tennessee Code Annotated § 65-4-124, which applies by its terms not to just an "incumbent local exchange telephone company" but rather to "all telecommunications services providers" who provide basic local exchange telephone service.

However laudable the desire of the Tennessee Regulatory Authority to have produced "one complete phone book containing the names and numbers of all customers," the language of the controlling statutes and of TRA Rule 1220-4-2-.15 simply cannot be stretched to provide TRA with authority to compel a non-utility publishing company to brand the cover of its White Pages directory, not just with the name, but also the commercial logo of a telephone utility in competition with BST.

We hold that TRA is without authority under present statutes and rules to compel BAPCO to brand its "White Pages" directory cover with the name and commercial logo of AT&T or any other telecommunications service provider who provides basic, local exchange telephone service.

V.    CONSTITUTIONAL QUESTIONS

BAPCO on appeal asserts that the action of TRA in compelling BAPCO to brand the cover of its White Pages directory with the name and commercial logo of AT&T constitutes "forced speech" in violation of the First Amendment of the Constitution of United States. *Miami Herald Publ'g. Co. v. Tornillo*, 418 U.S. 241, 257 (1974). BAPCO further asserts that the TRA order effects a confiscatory taking of property in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and in violation of Article 1 section 8 of the Constitution of Tennessee.

Since the majority of this Court is in agreement that the TRA order underlying this appeal is invalid on grounds other than those constitutional issues presented, I would prefer to pretermit the

constitutional issues under *Teague v. Campbell County*, 920 S.W.2d 219 (Tenn. Ct. App. 1995) and *Watts v. Memphis Transit Management Co.*, 224 Tenn. 721, 462 S.W.2d 495 (Tenn. 1971). Judge Koch, however, prefers to address the First Amendment "forced speech" question, and since on the merits of this constitutional question I agree with him, I concur in section VI of his separate concurring opinion entitled "Constitutional Limits on the TRA's Authority to Compel Speech."

VI.     TRADEMARK ISSUES

BAPCO asserts that the TRA order violates state and federal trademark law and promotes marketplace confusion.

We have held that TRA has no jurisdiction over BAPCO in its non-utility functions. The only utility function performed by BAPCO in this case was under its contract with BST whereby it undertook to perform for BST the utility duties mandated by federal and state law. It is undisputed that BAPCO has performed these utility duties for BST. We have further held that the branding of the "White Pages" directory cover produced by BAPCO is a non-utility function. These rulings have disposed of all issues necessary to the determination of this case. We therefore pretermit the trademark issues. *See General Outdoor Adver. Co. v. Coley*, 23 Tenn. App. 292, 131 S.W.2d 305 (1938); *Deaton v. Evans*, 192 Tenn. 348, 241 S.W.2d 423 (1951); *Tennessee Cable Television Ass'n v. Public Serv. Comm'n*, 844 S.W.2d 151 (Tenn. Ct. App. 1992).

VII.    THE NEXTLINK CASE

In the disposition of these consolidated cases, our holding in the AT&T case is necessarily dispositive of the Nextlink case.

Nextlink Tennessee LLC, MCI Telecommunications Corporation and American Communications Services, Inc. are all "competing telecommunications service providers" within the meaning of Tennessee Code Annotated § 65-4-101(e) in competition with BST. All of these parties were allowed to intervene in the AT&T case and participate therein. Their application to intervene sought no specific relief for themselves but rather strongly supported the position of AT&T. When the TRA released its 1998 order sustaining the position of AT&T, it granted the relief sought by AT&T without specific adjudication of the Nextlink, MCI, and ACSI interventions.

When BAPCO appealed the March 19, 1998 order in the AT&T case, no stay order issued, and the March 19, 1998 order remained effective. Tenn. Code Ann. § 4-5-322(c); *Underwood v. Liberty Mut. Ins. Co.*, 782 S.W.2d 175, 177 (Tenn. 1989). Nextlink then approached BAPCO about putting the name and commercial logo of Nextlink on the front cover of the BAPCO "White Pages" directory, only to be rebuffed by BAPCO on an assertion that the March 19, 1998 order only adjudicated the claim of AT&T and did not apply to Nextlink. On September 23, 1998, Nextlink filed its petition in this case seeking to compel BAPCO to comply with the declaratory order of March 19, 1998 as it related to Nextlink and to implement sanctions against BAPCO.

The Nextlink case was heard on oral argument on October 15, 1998, and on November 2, 1998, TRA entered an order enforcing Rule 1220-4-2-.15 against BAPCO holding in pertinent part:

The fundamental issue raised by NEXTLINK's petition and BAPCO's response is whether the Authority may enforce TRA Rule 1220-4-2-.15, as interpreted in the Declaratory Order, pending appeal of the Declaratory Order. On October 15, 1998, following the submission of briefs and oral arguments, the Authority deliberated and concluded that, in the absence of a stay of the Declaratory Order, BAPCO must comply with TRA Rule 1220-4-2-.15 as interpreted in the Authority's Declaratory Order of March 19, 1998, and as applied to all similarly situated carriers. In support of that decision, the Authority makes the following findings of fact and conclusions of law.

1. NEXTLINK is a certified, competitive local exchange telephone company. *See* Docket No. 95-02502 (September 29, 1995) and Docket No. 96-00728 (April 12, 1996). NEXTLINK offers local telephone service to subscribers in Memphis and Nashville in competition with BellSouth. *See* Docket No. 97-00309, Tr. Vol. VIII B, pages 112-113. NEXTLINK's customer listings are contained within the White Pages directories published by BAPCO on behalf of BellSouth. *See* Docket No. 97-00309, Tr. Vol. XIA, pages 10-11. As required by federal law, the White Page Directories published by BAPCO on behalf of BellSouth must include the names and telephone numbers of NEXTLINK's local customers. The facts from the foregoing dockets were officially noticed by the Authority in a letter dated October 16, 1998, without objection from the parties.

2. In its Declaratory Order, the Authority declared that the rule on White Pages directories applies to competitive local exchange carriers and that such carriers should be allowed the opportunity to appear on the cover of the White Pages under the same terms and conditions as BellSouth itself. Although the ordering clause of the decision grants relief only to AT&T, the Order was based squarely on the Authority's interpretation and application of the agency's rule on White Pages directories and therefore, the agency's holding concerning the interpretation of the rule must not be applied only to AT&T but it must equally be applied to all similarly situated carriers that seek the same relief.

By definition, an agency rule is a "statement of general applicability." *See* Tenn. Code Ann. § 4-5-102(10). Consequently, an interpretation of a rule necessarily applies to all similarly situated companies. NEXTLINK is similarly situated to AT&T in that it too is a certificated competing local exchange provider. Moreover, NEXTLINK, is in fact, providing service. Therefore, since there are no relevant differences between NEXTLINK and AT&T regarding the application of the rule on White Pages directories, no contested case hearing was required on this issue.

3. In the absence of a stay, the Authority's decision in its Declaratory Order remains in effect pending appeal. Under Tennessee law, the filing of a petition for review "does not itself stay enforcement of the agency decision." *See* Tenn. Code Ann. § 4-5-322(c). BAPCO itself concedes that the Declaratory Order is now in effect, at least as it applies to BAPCO and AT&T. *See* also Transcript of October 15, 1998, at 32. Therefore, the Authority's interpretation of Rule 1220-4-2-.15 is effective and enforceable. *See Underwood v. Liberty Mutual*, 782 S.W.2d 175, 177 (Tenn. 1989) holding that "judgment may continue to be enforced pending an appeal unless a stay is ordered."

4. BAPCO's argument that NEXTLINK's claim is barred by res judicata is not persuasive. Similarly, BAPCO's argument that the Authority cannot now modify the terms of the Declaratory Order has no merit, because NEXTLINK has not asked the Authority to amend its Declaratory Order nor is any such modification necessary to grant NEXTLINK's petition. The Declaratory Order interprets and applies the Authority's rule as to White Pages directories and that interpretation necessarily applies to any other, similarly situated carrier covered by that rule.

5. In its Declaratory Order, the Authority directed BAPCO to negotiate with AT&T for "the same terms and conditions" which BAPCO offers to BellSouth. BAPCO acknowledges that no such terms and conditions exist at this time. *See* Transcript of October 15, 1998, at p. 6. BAPCO is therefore obliged to negotiate with NEXTLINK for the opportunity to appear on the cover of the White Pages directories in a size and style comparable to the name and logo of BellSouth.

*In Re: Petition of Nextlink to Sanction Bellsouth*, Order enforcing T.R.A. Rule 120-4-2-.15 and denying sanctions, Tenn. Regulatory Auth. No. 98-00654 (Nov. 2, 1998)(footnotes omitted).

TRA declined to impose sanctions upon BAPCO and BAPCO timely appealed the November 2, 1998 order.

BAPCO on appeal asserts three issues.

1. That BAPCO's procedural due process rights were violated when the TRA refused to allow BAPCO to submit evidence on whether or not Nextlink was a "similarly situated competitive local exchange carrier."
2. The March 19, 1998 order, which is the subject of the AT&T appeal, is *res judicata* of the claims of Nextlink.
3. That BAPCO's appeal of the AT&T order divested the TRA of any jurisdiction of the Nextlink case.

The TRA's November 2, 1998 order is so completely and correctly dispositive of these three issues on appeal as to require little discussion. Nextlink is a certified, competitive local exchange

-18-

telephone company providing local service in competition with BST, and its White Pages customers are published in the BAPCO "White Pages" directories. It is, thus, in the only context at issue, "similarly situated" as a matter of law, and further proof is neither necessary nor proper.

> If the agency and the individual disagree only with respect to the way in which the law applies to an uncontroverted set of facts, additional procedures cannot possibly enhance the accuracy of the factfinding process, simply because the agency does not need to resolve any factual controversies. This is a familiar principle that administrative law borrows from the concept of summary judgment in civil procedure.

Kenneth C. Davis & Richard S. Pierce, Sr., Administrative Law Treaties, § 9.5 (3d ed.1994).

Likewise, *res judicata* is not applicable to this case. Intervention in this case is governed by Tennessee Code Annotated § 4-5-310 and not by Rule 24 of the Tennessee Rules of Civil Procedure. Rule 24.03 Tennessee Rules of Civil Procedure provides that one seeking to intervene must accompany his intervention motion with a " ... pleading setting forth the claim or defense for which intervention is sought." Tenn. R. App. P. R. 24.03. Tennessee Code Annotated § 4-5-310 does not require a petitioner for intervention to seek affirmative relief. In the AT&T case Nextlink did not seek or receive specific affirmative relief.

In the AT&T action for a declaratory order TRA Rule 1220-4-2-.15 was already long in existence having been adopted in1968. The AT&T adjudication sought an interpretation of this rule.

> Administrative agencies typically perform both legislative and adjudicative functions. These functions are closely related, and the line between them is not always clear.

> Rule making is essentially a legislative function because it is primarily concerned with considerations of policy. It is the process by which an agency lays down new prescriptions to govern the future conduct of those subject to its authority.

*Tennessee Cable*, 844 S.W.2d at 160-61 (citations omitted).

In the *AT&T* case the TRA interpreted its rule. The *Nextlink* case sought to enforce the previous interpretation of this same rule. Application of this rule is an executive or administrative function. *In re: Cumberland Power Co.*, 147 Tenn. 504, 509-513, 249 S.W. 818, 819-20 (1923). The TRA correctly held that Nextlink is not barred by *res judicata.*

Finally, no stay order having been issued in the AT&T appeal, the TRA was free to enforce its decision in the Nextlink proceeding. *See* Tenn. Code Ann. § 4-5-322(c).

IX.    CONCLUSION

Because we find that neither state nor federal law allows the TRA to compel BAPCO to brand its White Pages *cover* with the name and commercial logo of "competing telecommunications service providers" in competition with BST, and because we further find, as articulated by Judge Koch in his separate concurring opinion, that such order imposes "forced speech" upon BAPCO in violation of the First Amendment of the Constitution of the United States, both the AT&T case and the Nextlink case are reversed.  The issues of alleged violation of the Fifth and Fourteenth Amendments to the Constitution of the United States, together with the trademark issues asserted in the AT&T case, are pretermitted.  The other issues raised by BAPCO in the Nextlink case are without merit. Costs of the AT&T case are assessed against AT&T.  Costs of the Nextlink case are assessed one-half against Nextlink and one-half against BAPCO.

_____
WILLIAM B. CAIN, JUDGE