# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| CONSUMER ADVOCATE DIVISION, OFFICE OF THE ATTORNEY GENERAL, STATE OF TENNESSEE, | ) ) ) ) ) | **FOR PUBLICATION**<br>**Filed:** March 30, 1998 |
| Appellee, | ) ) ) | Tennessee Public Service |
| v. | ) ) | Commission No. 96-01032 |
| H. LYNN GREER, CHAIR; SARA KYLE, DIRECTOR, and MELVIN MALONE, DIRECTOR, CONSTITUTING THE TENNESSEE REGULATORY AUTHORITY, and BELLSOUTH TELECOMMUNICATIONS, INC., | ) ) ) ) ) ) ) | Appeal No.<br>01S01-9706-BC-00141 |
| Appellants. | ) ) ) | |

**FILED**

**March 30, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

For Appellants - Greer, Kyle & Malone:
Paul C. Ney Jr.
Gregory Mitchell
DORAMUS, TRAUGER & NEY
Nashville, Tennessee

For Appellants - BellSouth
Guy Hicks
BELLSOUTH TELECOMMUNICATIONS
Nashville, Tennessee

Bennett L. Ross
BELLSOUTH TELECOMMUNICATIONS
Atlanta, Georgia

For Appellees
John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

L. Vincent Williams
Consumer Advocate
Office of Attorney General
Nashville, Tennessee

# O P I N I O N

COURT OF APPEALS REVERSED.                    DROWOTA, J.

We granted this appeal to determine two issues: (1) whether the petition to intervene filed with the Tennessee Regulatory Authority ("TRA"), by the Consumer Advocate Division of the Attorney General's Office ("Advocate"), constituted a written complaint; and (2) whether the TRA is statutorily required to hold a contested case hearing upon the filing of a written complaint.

After careful consideration, we first conclude that the petition to intervene filed by the Advocate in this case did not constitute a written complaint. Applying familiar rules of statutory construction, we also conclude that the TRA is not statutorily mandated to conduct a contested case hearing in every case in which a written complaint is filed. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the order approving the tariff.

## FACTUAL BACKGROUND

On June 3, 1996, BellSouth Telecommunications, Inc. ('BellSouth") filed with the Tennessee Public Service Commission ("PSC"), a tariff introducing three new optional local exchange service packages for BellSouth's residential customers. The PSC placed the tariff on the agenda of its June 25, 1996, commission conference and, on June 19, 1996, gave notice to the Advocate that the tariff would be considered at the commission conference.[1] On June 21, 1996, the Advocate filed a petition to intervene in the commission conference pursuant to Tenn. Code Ann. §

---

[1] As a result of legislative action in 1995, the PSC ceased to exist on June 30, 1996. Therefore, the PSC set a commission conference for June 25, 1996 to complete its public business. On June 19, 1996, the PSC published an agenda listing BellSouth's tariff as ready for disposition.

65-4-118(c)(2)(A) (1997 Supp.).[2]  The petition did not include specific allegations of fact as to why the tariff was unjust or unreasonable, but rather simply stated that the tariff "may prejudice Tennessee consumers."

On June 28, 1996, the PSC issued an order approving the tariff and denying the Advocate's petition to intervene.  On July 9, 1996, the Advocate filed in the Court of Appeals a petition for review pursuant to Rule 12, Tenn. R. App. P.  The TRA, which is the successor to the PSC with regard to regulation of public utilities in this State, filed a motion to dismiss the petition for review for lack of jurisdiction.[3]  The Court of Appeals granted the motion, concluding that it had no jurisdiction to review the order of the PSC because the order did not arise from a contested case.

Thereafter, the Advocate filed a petition to rehear the dismissal of its Rule 12 petition for review.  The Court of Appeals granted the petition to rehear, vacated its previous order, and denied the TRA's motion to dismiss the appeal.  In so holding, the intermediate court stated as follows:

> It is the opinion of this Court that Tennessee Code Annotated § 65-5-203(a) required the TRA to hold a hearing because the [Advocate] filed a written complaint with the TRA challenging the justness of the rates proposed by BellSouth.  Because Tennessee Code Annotated § 65-5-203(a) required the TRA to hold a hearing, this Court has jurisdiction pursuant to Tennessee Code Annotated § 4-5-322(a)(1).

The intermediate court denied BellSouth's request to reconsider on the grounds that the Rules of Appellate Procedure do not provide for motions to

---

[2]That statute provides, in pertinent part, that the Advocate, "may, with the approval of the attorney general and reporter, participate or intervene as a party in any matter or proceeding before the [TRA] . . . ."

[3]On September 5, 1996, the Court of Appeals entered an order in this cause substituting the TRA in the place of the PSC.

reconsider. In the same order, the Court of Appeals reversed the PSC order and remanded the case to the TRA for the purpose of conducting a contested case hearing.

Thereafter, we granted BellSouth and the TRA permission to appeal pursuant to Rule 11, Tenn. R. App. P., and for the reasons that follow, now reverse the decision of the Court of Appeals.

## STATUTORY CONSTRUCTION

In this case, the Court of Appeals held that under Tenn. Code Ann. § 65-5-203(a) (1997 Supp.), the TRA is always required to convene a contested case hearing upon the filing of a written complaint and the intermediate court also held that the petition to intervene filed by the Advocate constituted a written complaint within the meaning of the statute. We first consider the language of the statute, which provides, in relevant part, as follows:

> When any public utility shall increase any existing individual rates, joint rates, tolls, fares, charges, or schedules thereof, or change or alter any existing classification, the authority shall have power either upon written complaint, or upon its own initiative, to hear and determine whether the increase, change or alteration is just and reasonable.

(Emphasis added).

In this Court, the TRA and BellSouth argue that the Advocate's petition to intervene does not constitute a "written complaint" as that term has been defined by the Rules of the TRA. Even assuming the petition to intervene had been a "written

-4-

complaint" within the meaning of the statute, the TRA and BellSouth argue that the TRA had no mandatory statutory duty to convene a contested case hearing. In contrast, the Advocate asserts that the petition to intervene constituted a written complaint and therefore triggered a mandatory statutory duty on the part of the TRA to hold a contested case hearing.

In resolving the issues in this appeal, we are guided by the following general rules of statutory construction. The role of this Court in construing statutes is to ascertain and give effect to legislative intent. Cronin v. Howe, 906 S.W.2d 910, 912 (Tenn. 1995). Whenever possible, legislative intent is to be ascertained from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language. Id. We must avoid strained constructions which would render portions of the statute inoperative or void. State v. Turner, 913 S.W.2d 158, 160 (Tenn. 1995). Instead, we must apply a reasonable construction in light of the purposes and objectives of the statutory provision. Id. Finally, a state agency's interpretation of a statute that the agency is charged to enforce is entitled to great weight in determining legislative intent. Nashville MobilePhone Co. Inc. v. Atkins, 536 S.W.2d 335, 340 (Tenn. 1976).

In applying these general rules in the context of this case, we first observe that the General Assembly has charged the TRA with the "general supervisory and regulatory power, jurisdiction and control over all public utilities." Tenn. Code Ann. § 65-4-104 (1997 Supp.). In fact, the Legislature has explicitly directed that statutory provisions relating to the authority of the TRA shall be given "a liberal construction" and has mandated that "any doubts as to the existence or extent of a power

conferred on the [TRA] . . . shall be resolved in favor of the existence of the power, to the end that the [TRA] may effectively govern and control the public utilities placed under its jurisdiction. . . ." Tenn. Code Ann. § 65-4-106 (1997 Supp.). The General Assembly, therefore, has "signaled its clear intent to vest in the [TRA] practically plenary authority over the utilities within its jurisdiction." Tennessee Cable Television Ass'n v. Tennessee Public Service Comm'n, 844 S.W.2d 151, 159 (Tenn. App. 1992). To enable the TRA to effectively accomplish its designated purpose -- the governance and supervision of public utilities -- the General Assembly has empowered the TRA to "adopt rules governing the procedures prescribed or authorized," including "rules of practice before the authority, together with forms and instructions," and "rules implementing, interpreting or making specific the various laws which [the TRA] enforces or administers." Tenn. Code Ann. § 65-2-102 (1) & (2) (1997 Supp.).

## I.

Acting in accordance with this express authorization, the TRA has adopted certain rules and regulations governing the filing of petitions and complaints in the TRA and the conduct of TRA proceedings. Particularly significant to this appeal is the TRA rule which delineates the required form and contents of a petition or complaint. That rule provides:

> Petitions, applications or formal complaints to the [TRA], whereby the originator of same desires a hearing and/or a formal order from the [TRA]: a) must be in writing; b) signed by the petitioner, applicant, complainant, or by their duly authorized representative or attorney; c) must contain in clear and logical form the allegations, statements of facts relied upon, the fact or thing done or omitted, together with the citation to any statutory, order or rules and regulations of this Commission; d) must conclude with the prayer specifying the particular relief or action sought from the Commission; e) name and address of

-6-

complainant or petitioner and their attorney; and f) if applicable, the name and address of the defendant or respondent, and may be in the following form:

Rule 1220-1-1-.05(1), Rules of Tennessee Regulatory Authority (hereinafter, "TRA Rules) (emphasis added). The rule is then followed by a form complaint or petition, which, in one section, advises a petitioner or complainant to

state in this and subsequent paragraphs the matter or matters intended to be complained of, naming every rate, fare, charge, classification, regulation or practice the lawfulness of which is challenged, and also, if practicable, the points between which the rates, etc. complained of are applied and other acts or things done or omitted, as may be necessary to fully acquaint the [TRA] with the details of the alleged complaint or petition, etc.

In determining that the Advocate had filed a written complaint in accordance with Tenn. Code Ann. § 65-5-203(a), the Court of Appeals made no mention of the above-quoted rules of procedure. An examination of the petition to intervene reveals that it does not specifically challenge the justness of the rates contained in the BellSouth tariff. The opening paragraph of the petition refers only to the need to convene a contested case to "determine the justness and reasonableness of the filing" because the tariff "may prejudice Tennessee consumers." It does not contain a specific allegation as to how or why Tennessee consumers may be prejudiced by the tariff. The Advocate's petition prayed for leave to intervene and participate as a party and that the court conform to a stay issued in another appellate court proceeding in which BellSouth was a party. The petition clearly does not conform to the measure of specificity required of formal complaints by the TRA Rules.

We emphasize that these rules of procedure were adopted in accordance with an express legislative authorization. Moreover, the specificity required of formal

complaints is not merely a matter of technical form. Under Tenn. Code Ann. § 65-5-203(a), "the burden of proof to show that the increase, change, or alteration is just and reasonable shall be upon the public utility making the same." In order to meet that burden, the public utility must be specifically informed of the nature of the complaints about the justness or reasonableness of the rates. A vague and nonspecific complaint does not afford the public utility sufficient information to allow it to prepare to meet its burden of proof. Clearly, the specificity required of a complaint by the Rules of the TRA serves an important function. The Court of Appeals should have evaluated the petition against the requirements of the Rules in determining whether the petition constituted a "written complaint" within the meaning of the statute. As we previously observed, the interpretation given a statute by a state agency charged with enforcing the statute is entitled to deference. Clearly, the petition failed to satisfy the specificity required by the Rules of the TRA; therefore, we conclude that the Court of Appeals erred in holding that the Advocate's petition to intervene constituted a "written complaint" under Tenn. Code Ann. § 65-5-2-3(a) (1997 Supp.).[4]

## II.

Even though we have determined that the petition to intervene filed in this case did not constitute a written complaint, we will also consider whether the TRA has

---

[4]We note that the specificity required by the Rules is supported by the statute which grants the Advocate authority to intervene. That statute provides that if the Advocate is "without sufficient information to initiate a proceeding, it may petition the [TRA], after notice to the affected utility, to obtain information from the utility. The petition shall state with particularity the information sought and the type of proceeding that may be initiated if the information is obtained." Tenn. Code Ann. § 64-4-118 (c)(2)(B). The General Assembly created a procedural mechanism to allow the Advocate to obtain specific information before filing a complaint. This statutory provision illustrates the importance of specificity.

a mandatory statutory duty to convene a contested case hearing upon the filing of a proper written complaint because the issue is likely to arise in future cases.

In our view, the clear import of the statutory language, "the authority shall have the power," is that the TRA has the power to convene a contested case hearing if it chooses to exercise the authority. In other words, the language used by the General Assembly implies discretion. Importantly, the statute <u>does</u> <u>not</u> say that the TRA "shall hold a hearing" upon the filing of a written complaint. Such language would clearly describe a mandatory duty. Once again, our role is to construe statutes consistently with legislative intent. If the Legislature had intended to mandate a contested hearing upon the filing of a written complaint, it easily could have utilized precise language to accomplish that mandate. Indeed, in other portions of the statutory scheme governing the TRA, the Legislature has employed such mandatory language requiring the TRA to convene a contested hearing. <u>See</u> <u>e.g.</u> Tenn. Code Ann. § 65-5-209(c) (1997 Supp.) ("the authority <u>shall</u> initiate a contested, evidentiary proceeding to establish initial rates on which the price regulation plan is based) (emphasis added); Tenn. Code Ann. § 65-5-209(d) (1997 Supp.) ("the authority <u>shall</u>, upon petition of the competing telecommunications services provider, hold a contested case proceeding.") (emphasis added). The absence of mandatory words in Tenn. Code Ann. § 65-5-203(a), indicates an intentional legislative choice. <u>State v. Harkins</u>, 88 S.W.2d 79, 82 (Tenn. 1992).

Moreover, other related statutory provisions support our finding of discretionary authority. For example, the General Assembly empowered the TRA to "[i]nvestigate, <u>upon its own initiative or upon complaint in writing</u>, any matter concerning any public

utility." Tenn. Code Ann. § 65-4-117(1) (1997 Supp.). By granting the TRA power to investigate, the General Assembly implicitly granted the TRA discretionary authority to determine, after investigation, whether a contested case hearing is warranted. Also, as previously observed, the General Assembly has declared in no uncertain terms that "any doubts as to the existence or extent of a power conferred on the [TRA] . . . shall be resolved in favor of the existence of the power, to the end that the [TRA] may effectively govern and control the public utilities placed under its jurisdiction. . . ." Tenn. Code Ann. § 65-4-106 (1997 Supp.). Construing the statute to afford the TRA discretionary authority, rather than to impose a mandatory duty, is consistent with this express declaration of the General Assembly. Such a construction will ensure that the TRA can effectively govern and control the public utilities placed under its jurisdiction. Therefore, we hold that the language of Tenn. Code Ann. § 65-5-203(a) does not impose a mandatory duty upon the TRA to convene a contested hearing in every case upon the filing of a written complaint.

In so holding, we disagree with the Advocate's argument that the last sentence of the statute imposes a mandatory duty. That sentence provides that "[i]t shall be the duty of the authority to approve any such increase, change or alteration upon being satisfied after full hearing that the same is just and reasonable." In our view, that language delineates the duty of the TRA once it has decided to convene a contested case hearing to consider whether or not the "increase, change or alteration" is just and reasonable. That statutory language is not relevant, in the first instance, to whether the TRA has a mandatory duty to convene a contested case hearing upon the filing of a written complaint.

## CONCLUSION

For the reasons herein stated, we conclude that the Court of Appeals erred in reversing the order of the TRA and remanding for a contested case hearing. Accordingly, the decision of the Court of Appeals is reversed, and the order of the TRA approving the tariff is reinstated.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**

Anderson, C. J.,
Birch, Holder, JJ.

Reid, J. - Not Participating

-11-